J. C. Penney Co., Inc., Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellee.

Argued June 7, 1979, before Judges WILKINSON, JR., MENCER and MACPHAIL, sitting as a panel of three.

*W. Jeffrey Sidebottom*, with him *Barley, Snyder, Cooper & Barber*, for appellant.

*Gary Niarini*, with him *Bradley L. Mallory*, Assistant Attorney General, *Harold H. Cramer*, Assistant Attorney General, *Robert W. Cunliffe*, Deputy Attorney General, and *Edward G. Biester, Jr.*, Attorney General, for appellee.

OPINION BY JUDGE MACPHAIL, September 10, 1979 :

J. C. Penney Co., Inc. (Appellant), has appealed to this Court from an order of the Lancaster County Court of Common Pleas sustaining the suspension of its certificate of appointment as an official inspection station for violating Section 834(e) of The Vehicle Code (Code), Act of April 29, 1959, P.L. 58, *as amended, formerly* 75 P.S. §834(e).[1] Specifically, Appellant was charged with falsifying inspection records.

The pertinent facts are not in dispute. Nicholas Fulginiti admittedly falsified the inspection records kept by Appellant at its auto service center in Lancaster, Pennsylvania. As soon as Fulginiti's misdeed was discovered by his immediate supervisor, Gary Black, he was fired. There is nothing in the evidence to indicate that Black or anyone else in a supervisory capacity above Fulginiti had any actual knowledge whatsoever of the falsification before the discovery by Black.

Section 819(b) of the Code, *formerly* 75 P.S. §819 (b),[2] provides :

> Provided, however, That if the servant or employee of any such inspection station shall without the authorization, knowledge or consent of his employer, violate any of the provisions of this act in reference to the inspection of vehicles, such violation or violations shall not be the cause of the suspension of the certificate of appointment, as herein provided, but such employee shall be subject to prosecution as hereinafter provided.

---

[1] Repealed by Section 7(b) of the Act of June 17, 1976, P.L. 162, *as amended* (found appended to 75 Pa. C.S. following Section 8122). A similar provision is now found at 75 Pa. C.S. §4724(a).

[2] No similar provision was included in the Vehicle Code, 75 Pa. C.S. §101 et seq.

Appellant's position is that at the time the records were falsified, Fulginiti was either a servant or employee[3] of Appellant and that his employment status was such that neither his act nor his knowledge of his act was imputable to Appellant. The burden of proving that Appellant comes within the statutory language of Section 819(b) is upon Appellant. *Commonwealth v. W. J. Harris and Son,* 403 Pa. 598, 170 A.2d 591 (1961).

> After a de novo hearing, the trial court concluded: However, Fulginiti was more than a mere 'employee.' He enjoyed almost absolute control over inspection records. If we were to pronounce Fulginiti an 'employee' the Court would have no logical basis with which to distinguish Mr. Black or any other administrative personnel up to and including the store manager. Either Fulginiti must be considered something other than an 'employee' or J. C. Penney must be deemed to have granted him such broad powers that it, in effect, 'authorized' all his decisions with respect to inspections, including the falsification of records.

Of course, the trial court is the fact finder in de novo appeals. Our scope of review is limited to determining whether the trial court based its findings on substantial evidence or committed an error of law. *Commonwealth v. Marini,* 25 Pa. Commonwealth Ct. 207, 360 A.2d 263 (1976).

---

[3] We disagree with the trial court's analysis of Fulginiti's status. In order to give effect to Section 834(e) in a corporate setting, the trial court apparently thought it necessary to conclude that Fulginiti was not a "servant or employee" as those words are used in Section 819(b). However, it is clear that even the officers of a corporation are servants. RESTATEMENT (SECOND) OF AGENCY §2, Comment c (1957). This does not mean that Section 819(b) excuses corporations from compliance with Section 834(e), since the question of imputed knowledge remains.

The record in this case discloses that Fulginiti was employed by Appellant as a service supervisor. He was paid on an hourly rather than a salary basis. He supervised ten or eleven people including four or five mechanics certified to perform inspections. He had no authority to hire or fire other employees. He shared control over the inspection records with Black, although it appears that Black limited his activity in that area to days when Fulginiti was not present. As a matter of fact, the discrepancy at issue here occurred when Black discovered an omission in the inspection records on Fulginiti's day off. Black was a member of Appellant's "management team" at Appellant's Lancaster store, representing the auto service center. Fulginiti had no similar status.

The narrow issue for us to resolve is whether the trial court correctly concluded from those facts that Appellant failed to sustain its burden of proving that Fulginiti's knowledge of his own actions was not imputable to Appellant by reason of Fulginiti's employment status. In an inspection violation case similar to the one now before us we held that an employer which is a corporation can acquire knowledge only through its agents[4] who acquire such knowledge within the actual or apparent scope of their authority or employment. *Department of Transportation, Bureau of Traffic Safety v. Moraiti,* 34 Pa. Commonwealth Ct. 27, 382 A.2d 997 (1978). Was Fulginiti's knowledge of what he did imputable to Appellant? We think not. Fulginiti's supervisory powers were narrowly restricted even within the auto center department. The fact that Fulginiti was dismissed as soon as the discrepancy became known to someone who was in authority to do something about it is crucial. Had Black,

---

[4] A servant is a species of agent. RESTATEMENT (SECOND) OF AGENCY §2, Comment a (1957).

for example, withheld the knowledge that he had of Fulginiti's misdeed, such knowledge would have been imputable to Appellant since Black was a member of Appellant's management team with authority and responsibility for the entire auto service center. Fulginiti's act with respect to the inspection records would be comparable to a certified mechanic's act in the actual inspection process. Both are first level employees with respect to those duties. It would be neither fair nor just to hold an employer liable for their misdeeds in the absence of actual knowledge thereof by someone with managerial authority and responsibility.

Accordingly, we hold that the trial court erred as a matter of law when it concluded that Appellant authorized or had knowledge of Fulginiti's falsification of the inspection records.

### Order

And Now, this 10th day of September, 1979, the order of the Court of Common Pleas of Lancaster County dated October 20, 1977, which denied the appeal of J. C. Penney Co., Inc., from the suspension of its Certificate of Appointment as an official inspection station, is reversed.